## Arrests and Citations for
## Dog Law Violations

PACKEL, Attorney General, May 15, 1974.—You have requested an opinion as to whether Dog Law enforcement agents are empowered to either arrest or issue citations to persons observed in the commission of offenses in violation of the Dog Law of 1965. In an informal opinion rendered on May 22, 1972, we advised your department that Dog Law enforcement officers were not peace officers and, consequently, could neither arrest violators of the Dog Law without a warrant nor issue citations in the course of their duties under that law. It is our opinion, and you are hereby advised, that the advice rendered therein properly defines the law enforcement powers of such officers.

The Dog Law of 1965 was enacted to provide for the regulation, licensing and protection of dogs: Act

of December 22, 1965, P. L. 1124, art. I, 3 PS §§460-101, et seq. Enforcement of the provisions of the act is vested in police officers which, for purposes of the act, includes "Any person employed or elected by this Commonwealth, or by any municipality, county or township, and whose duty it is to preserve peace or to make arrests or to enforce the law. The term includes State constabulary, game, fish and forest wardens": 3 PS §460-102(7). Article X of the act, 3 PS §460-1001, charges the secretary, through his officers and agents, with the general enforcement of the Dog Law, and empowers him to employ "all proper means" towards these ends. The act sets forth several such powers which may be employed by enforcement officers, among which are the authority to inspect for violations of the act and to apprehend dogs found running at large.

In contrast to these general enforcement functions which may be performed by dog enforcement officers in an attempt to obtain compliance with the Dog Law, the power to initiate criminal proceedings for the failure or refusal to comply with the law may only be exercised in conformity with the procedures set forth in Chapter 50 of the Pennsylvania Rules of Criminal Procedure regarding the instituting of proceedings in summary cases. Rule 51-C, effective January 1, 1974, states that for purposes of that rule, "a police officer shall be limited to a member of the Pennsylvania State Police Force, a member of the police department authorized and operating under the authority of any political subdivision and any employe of the Commonwealth or a political subdivision having the powers of a police officer when acting within the scope of his employment." Those persons who fall within the scope of the above definition and who have the power to arrest are authorized to initiate summary

proceedings by arrest or by citation, depending on circumstances defined in the rule. Those persons who are not encompassed by the above definition may only institute proceedings by filing a complaint with the proper issuing authority pursuant to rule 51-A(6).

In determining who is and who is not a police officer for purposes of the rule, it is helpful to examine the comments to the rule and to compare the powers of Dog Law officers with those granted to other enforcement agents. The comments to the rule state that the definition of police officer in section C excludes constables, county detectives and all other persons exercising police powers other than those enumerated in section C, but that the rule does not suspend additional procedures set forth in the Fish and Game Laws in connection with violations thereof. This commentary indicates that not all persons exercising certain incidents of police powers are to be considered police officers for purposes of initiating prosecutions, and that the determinative factor in each case is the statutory basis on which the enforcement agent relies for his powers.

In contrast to the general enforcement powers set forth in the Dog Law, the Fish and Game Laws specifically provide that their enforcement personnel have the power to arrest without warrant for violations of the respective acts and that they may exercise a host of other police powers in the performance of their duties: Act of May 21, 1925, P. L. 4848, as amended, 30 PS §§256, 271, 277; Act of June 3, 1937, P. L. 1225, as amended, 34 PS §§1311.214, 1311.1202. The Administrative Code also provides authority for game wardens, as well as for forest officers, to exercise powers of arrest when enforcing their respective laws: Act of April 9, 1929, P. L. 177, as amended, 71 PS §§510-10, 510-14, 675. The fact that these enumerated

powers are subject, in turn, to the procedures outlined in Chapter 50 and may only be exercised in the manner prescribed therein does not diminish the statutory authority to act with full police powers in the proper circumstances.

Furthermore, both the Fish and Game Laws provide an alternative procedure for out-of-court settlement of summary violations of those laws known as an "acknowledgement of guilt": 30 PS §279; 34 PS §1311.1203. These procedures are alluded to in the comment to rule 51-C and remain undistrubed by the limitations imposed by the rule.

By contrasting the enforcement sections of the Dog Law with those of the Forest, Fish, and Game Laws, the significance of the distinction drawn in rule 51 becomes apparent. Whereas fish, game and forest officers have been granted the powers of arrest, search, seizure and charge normally afforded to peace officers, Dog Law agents lack those incidents of police powers which would elevate them to the same plateau. Their authority is circumscribed by the powers enumerated in the Dog Law, and their proper remedy for apprehending violators of the act is to file a private complaint with the issuing authority, who shall proceed as in other summary cases.

This conclusion gives rise to still another question, viz., whether forest, fish or game wardens may utilize the arrest and citation powers conferred on them by their respective statutes when engaged in the enforcement of the Dog Law. Reference to the Administrative Code ancillaries is instructive on this point.

The several statutes conferring arrest powers upon the forest, game or fish wardens limit the use of those powers by each respective warden to enforcement of the specific act under which his office was created. Absent any supplemental powers, therefore, a fish

warden could utilize his arrest powers only when enforcing the Fish Law, a game warden when enforcing the Game Law, and so forth. However, additional power has been given to forest, fish and game officers by a reciprocal enforcement provision of the Administrative Code, which confers upon each of the wardens the duty to enforce all the laws relating to game, fish and forestry, and extends the powers of each in such a way as to give them full authority to carry out the correlated statutes: Act of April 21, 1915, P. L. 156, sec. 1, as amended by Act of May 29, 1917, P. L. 309, sec. 1, 71 PS §766.

These coextensive arrest and citation powers have not yet been extended to these wardens for purposes of enforcing the Dog Law. As in the case of constables, who no longer have any powers beyond those of a private citizen to effectuate a warrantless arrest, the reference made to these wardens in the Dog Law is simply an avenue for employing their assistance in the general enforcement of the act and does not confer upon them powers greater than those which may be exercised by other Dog Law officers and agents. Only those police officers who are members either of the State Police or of the police department of a political subdivision of the Commonwealth may utilize the arrest and citation procedures outlined in Pa. R. Crim. P. 51 when enforcing the Dog Law. All other agents must conform to the complaint procedure set forth in rule 51-A(6).

To summarize, officers and agents of the Department of Agriculture are entrusted with the duty to administer the directives of the Dog Law and are authorized to exercise those powers as are set forth in the act in order to achieve this objective and to determine whether any person is not acting in conformity thereto. However, the power to arrest or issue citations

for violations of the act remains in the exclusive domain of those police officers who are authorized by the Rules of Criminal Procedure to utilize these procedures. Should a Dog Law agent wish to initiate criminal proceedings, he must abide by the procedure prescribed by the rules for private complainants.

We understand that the stringent requirements of Rule 51 may handicap your efforts to enforce the laws of the Commonwealth. Whether the legal status of dog law enforcement agents should be changed in this regard, however, is a matter for the consideration of the legislature, and we suggest you submit amendatory proposals to that body to effectuate the necessary statutory changes.

You have also requested our opinion as to the enforcement powers of agents of humane societies or associations for the prevention of cruelty to animals. Absent an agreement entered into with the Department of Agriculture pursuant to section 1001 of the act, 3 PS §460-1001, these individuals may not exercise any of the enforcement powers conferred upon Dog Law enforcement agents. Furthermore, for the reasons discussed above with regard to Dog Law personnel, humane agents are not empowered to arrest persons for violations of the Dog Law, but, like other private individuals, they may institute summary proceedings for violations of the act by filing a complaint with the District Justice.

Despite their status as private complainants under the Dog Law, humane agents are granted certain other police powers for curbing the infractions enumerated in section 5511 of the Crimes Code relating to cruelty to animals: Act of December 6, 1972, P. L. 1068 (No. 334), as amended by Act of December 12, 1973, P. L. 288 (No. 137), 18 C.P.S.A. §5511. Since

subsection (i) authorizes these agents to arrest on view and bring before a justice of the peace any offender found violating the provisions of the act, it is clear that the legislature intended to confer upon this group of persons the power to terminate conduct which they reasonably believe to be in violation of the act. Nevertheless, the method of instituting criminal proceedings must conform to the procedures outlined in rules 51 and 133, which, in turn, are subject to the provisions of rule 51-C.

As discussed previously, in order to have the status of a police officer for these purposes, the agent must either be a policeman or an employe of the Commonwealth or a political subdivision with police powers. The disparity between the definition of a police officer in the rules and the vocation of humane agents engenders a fragmented construction of the term "arrest," resulting in the dichotomy of sanctioning the humane agent's apprehension of potential culprits while, at the same time, expressing doubt as to his judgment in deciding which individuals to prosecute.

In conclusion, if we are to give credence to both the statute and the applicable rules, humane agents may capture and take before a justice of the peace individuals thought to be acting in violation of section 5511, but the agent must then proceed as a private complainant for purposes of bringing criminal charges.

Recognizing the impracticality of this anomalous state of affairs, we are sending a copy of this opinion to the Criminal Procedure Rules Committee with the recommendation that they review the current procedures for instituting criminal proceedings and consider amending them to correspond more directly with the intent of the General Assembly.